**AFFIDAVIT**

I, Shawna Weir, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (719) 627-7969, with International Mobile Subscriber Identity / Electronic Serial Number 356212101860725 (the "Target Cell Phone"), whose service provider is Metro PCS, a wireless telephone service provider headquartered at 2250 Lakeside Blvd. Richardson, Texas, 75082.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A), to require Metro PCS to disclose to the government copies of the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.  Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3123(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  *See* 18 U.S.C. §§ 3121-3127.  The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  *See* 18 U.S.C. § 3123(b)(1).

3.  I am a Deportation Officer (DO) with the Department of Homeland Security, U.S. Immigration & Customs Enforcement (ICE) and have been since August, 2014.  I previously

held the title of Immigration Enforcement Agent (IEA) from April 2007 until August 2014.  I successfully completed the Immigration Officer Basic Training Course (ICE-D) at the Federal Law Enforcement Training Center (FLETC) in Brunswick, Georgia in August 2007. As a DO with ICE, I am currently assigned to the Prosecutions Unit at the Denver Field Office.  I have been permanently assigned to this unit since March 2018.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 751(a) have been committed and are being committed by Carlos Robert PEREZ-Rodriguez; Douglas Daniel AMAYA-Arriaga; and Amilcar Enrique AGUILAR-Hernandez.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that the information sought by this warrant will help locate Carlos Robert PEREZ-Rodriguez; Douglas Daniel AMAYA-Arriaga; and Amilcar Enrique AGUILAR-Hernandez.  These individuals escaped from the facility in which they were confined and immediately fled in order to avoid apprehension.  Federal arrest warrants were issued for these individuals by Magistrate Judge Kristen L. Mix on June 16, 2019, based on a criminal complaint detailing their escape from the ICE-GEO Contract Detention Facility in Aurora, Colorado.  Through follow-up investigation, ICE has learned that, following their escape, Carlos Robert PEREZ-Rodriguez; Douglas Daniel AMAYA-Arriaga; and Amilcar Enrique AGUILAR-Hernandez were transported

to a Metro PCS retail store in Colorado Springs, Colorado and purchased 2 prepaid wireless phones. These phones were later activated under the names Douglas Daniel AMAYA-Arriaga and Amilcar Enrique AGUILAR-Hernandez. Therefore, there is probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting Carlos Robert PEREZ-Rodriguez; Douglas Daniel AMAYA-Arriaga; and Amilcar Enrique AGUILAR-Hernandez, who are "person(s) to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is: a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

8. The United States, including ICE, is conducting a criminal investigation of Carlos Robert PEREZ-Rodriguez; Douglas Daniel AMAYA-Arriaga; and Amilcar Enrique AGUILAR-Hernandez, regarding possible violations of 18 U.S.C. § 751(a).

9. On June 16, 2019, at approximately 12:29 p.m.. MST, three detainees at the Aurora, Colorado, ICE-GEO Contract Detention Facility; Carlos Robert PEREZ-Rodriguez, Douglas Daniel AMAYA-Arriaga, and Amilcar Enrique AGUILAR-Hernandez, escaped from the south building recreation yard by scaling a concrete wall and manipulating the recreation yard perimeter fence.

10. On June 19, 2019, an anonymous tip was received by the Colorado Springs Police Department which provided the address of an individual alleged to have had contact with PEREZ, AMAYA and AGUILAR, following their escape. The tip was then forwarded to ICE,

and officers immediately responded to that address and spoke with a female occupant, later identified as Guadalupe Moreno.

11.     Guadalupe Moreno revealed the following information:  In the early morning hours of June 17, 2019, she received a phone call from Amilcar Enrique AGUILAR-Hernandez, whom she described as a previous acquaintance from El Salvador.  AGUILAR reportedly told Moreno he and a couple of his friends had recently been released from jail and requested assistance in getting a ride from Aurora, Colorado to Colorado Springs, Colorado.  Moreno claimed she responded to a King Soopers on Martin Luther King Boulevard in Denver, Colorado, picked up and transported all three individuals down to Colorado Springs, eventually taking them to a Metro PCS retail store to purchase phones.  Moreno claims she paid for two (2) wireless phones; one of which she claims was to be shared by Douglas Daniel AMAYA-Arriaga, and Amilcar Enrique AGUILAR-Hernandez; and a second for Carlos Robert PEREZ-Rodriguez.

12.     Morene then supplied officers with the original receipt for this transaction, which listed the following: Invoice dated June 17, 2019; two (2) Samsung Galaxy J2 phones purchased under the name "Duglas Amaya"; one phone (serial number 356212101860725) activated under phone number (719) 627-7969; second phone (serial number 356212100850933) activated under phone number (719) 960-9561.

13.     On June 19, 2019, an undercover ICE Homeland Security Investigations (HSI) agent assisting with the investigation called the (719) 627-7969 number, using the ruse of a possible employment opportunity. During the course of this conversation, the male who answered the phone verbally identified himself as "Amilcar AGUILAR".

14.     Determining the location of the target cell phone prospectively will likely aid in the location and apprehension of one or more of the escaped individuals.  Similarly, historical

4

location information will likely shed light on the actions of these individuals following their escape and will therefore aid in the apprehension of one or more of the escaped individuals.

15. In my training and experience, I have learned that Metro PCS is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that Metro PCS can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Metro PCS's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I know that Metro PCS can collect historical and prospective cell-site data about the Target Cell Phone. Based on my training and

experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as Metro PCS typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the SUBJECT PHONE's user or users and may assist in the identification of a fugitive, of co-conspirators, and/or victims.

## **AUTHORIZATION REQUEST**

18. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

19. I further request that the Court direct Metro PCS to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Metro PCS, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result,

as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct Metro PCS to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Metro PCS. I also request that the Court direct Metro PCS to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Metro PCS's services, including by initiating a signal to determine the location of the Target Cell Phone on Metro PCS's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.

22. I further request that this Court order the Metro PCS not to notify the subscriber of the existence of the warrant; the requested warrant relates to an ongoing criminal investigation with targets who are actively fleeing from law enforcement. Accordingly, there is reason to believe that notification of the existence of the requested warrant will seriously jeopardize the investigation, including by giving the targets the opportunity to destroy evidence and change patterns of behavior. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

23.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

Respectfully submitted,

*s/ Shawna Weir*
Shawna Weir
Deportation Officer
Immigration & Customs Enforcement

Subscribed and sworn to before me on     **19 Jun 2019**    , 2019

THE HON. KRISTEN L. MIX
UNITED STATES MAGISTRATE JUDGE

**Reviewed and Submitted by Rajiv Mohan, Assistant United States Attorney.**

**To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant will also function as a pen register order. I, Rajiv Mohan, thus certify that the information likely to be obtained is relevant to an ongoing criminal investigation conducted by the above agency.** *See* **18 U.S.C. §§ 3122(b), 3123(b).**